IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Dazine Adger, | ) | Civil Action No. 8:10-1856-HMH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

Plaintiff filed a claim for DIB on December 21, 2006 with an alleged disability onset date of November 1, 2006 [R. 117–19]. Plaintiff's claim was denied initially on March 6, 2007 [R. 35–36, 60–63] and upon reconsideration on May 15, 2007 [R. 37–38, 68–69]. Plaintiff filed a timely request for hearing [R. 70], and on May 15, 2009, a video hearing was held before Administrative Law Judge ("ALJ") Douglas S. Stults.[2] [R. 8–34]. Although

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Plaintiff appeared in Greenville, South Carolina, and the ALJ presided over the hearing from Oklahoma City, Oklahoma. [R. 45.]

advised of her right to counsel, Plaintiff chose to appear and testify without the assistance of counsel.[3]  [R. 10–12.]

The ALJ issued his decision on June 9, 2009, finding Plaintiff was not disabled for purposes of the Social Security Act ("the Act").  [R. 42–54.]  The ALJ considered the following listings to determine Plaintiff's severe impairments and whether Plaintiff's impairments met or equaled a listing: 1.04 [R. 50]; 12.04, 12.06, and 12.09 [R. 49–50]; and 5.08 [R.50].  The ALJ found Plaintiff had the following severe physical impairments: degenerative disc disease, cervical and lumbar, with chronic pain; and gastroesophageal reflux disease.  [R. 48, Finding 3.]  However, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 50, Finding 4.] Further, the ALJ found Plaintiff had the residual functional capacity to perform sedentary work, with restrictions.  [R. 50, Finding 5.]  The ALJ found Plaintiff can lift/carry ten pounds occasionally; sit for up to six hours; stand/walk for up to two hours with normal breaks; and balance frequently.  [*Id.*]  The ALJ found Plaintiff was restricted to occasional climbing, stooping, kneeling, crouching, and crawling; no ladders, ropes, or scaffolds; and only occasional exposure to unusual workplace hazards such as moving mechanical parts of equipment, tools, or machinery, electrical shock, working in high exposed places, exposure to radiation, working with explosives, and exposure to toxic caustic chemicals.  [R. 50–51, Finding 5.]

---

[3]Plaintiff initially requested and was appointed counsel for representation before the Social Security Administration. [R. 116.] She subsequently withdrew her request for representation and relieved the King Law Firm from further representation on her claim [R. 114] and expressly waived her right to representation [R. 10–12, 113].

Plaintiff requested Appeals Council review of the ALJ's decision. [R. 6–7]. On June 11, 2010, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision. [R. 1–5; 20 C.F.R. § 404.981.] Plaintiff filed this action for judicial review on July 16, 2010. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ failed to properly develop the record on Plaintiff's behalf. Plaintiff argues that, because she appeared pro se, the ALJ erred by failing to order consultative examinations by a physician, psychologist, phychiatrist, family doctor, or orthopedist for the full development of the nature of severity of Plaintiff's mental and medical issues. Plaintiff complains that the ALJ reviewed "piece-meal medical reports of treatment with no real inquiry as to claimant's level of severity of her impairments or her physical and mental limitations." [Doc. 10 at 7.]

The Commissioner argues the ALJ successfully fulfilled his duty to develop the record and was not required to order a consultative examination. The Commissioner also contends substantial evidence supports the ALJ's decision.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ),'" not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21

F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v.*

*Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions.

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

**A.    *Substantial Gainful Activity***

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he

8

is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. §

404.1574–.1575.

      **B.**    ***Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform

basic work activities.  *See* 20 C.F.R. § 404.1521.  When determining whether a claimant's

physical and mental impairments are sufficiently severe, the ALJ must consider the

combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ

must evaluate a disability claimant as a whole person and not in the abstract, having

several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir.

1989) (stating that, when evaluating the effect of a number of impairments on a disability

claimant, "the [Commissioner] must consider the combined effect of a claimant's

impairments and not fragmentize them").  Accordingly, the ALJ must make specific and

well-articulated findings as to the effect of a combination of impairments when determining

whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must

adequately explain his or her evaluation of the combined effects of the impairments.").  If

the ALJ finds a combination of impairments to be severe, "the combined impact of the

impairments shall be considered throughout the disability determination process."  42

U.S.C. § 423(d)(2)(B).

      **C.**    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals

the criteria of a listing found at 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the

9

duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20

---

[5]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e)

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant

---

to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id*.

issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent

12

evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

### IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

### V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig,* 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

14

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain." *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective

complaints of pain and physical discomfort can give rise to a finding of total disability, even

when those complaints [a]re not supported fully by objective observable signs." *Coffman*,

829 F.2d at 518. The ALJ must consider all of a claimant's statements about his

symptoms, including pain, and determine the extent to which the symptoms can reasonably

be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528.

Indeed, the Fourth Circuit has rejected a rule which would require the claimant to

demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108

(4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all

administrative law judges within the circuit a policy stating Fourth Circuit law on the subject

of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).

The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence. If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,

15

> support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb

16

credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.")

## APPLICATION AND ANALYSIS

### When the ALJ Should Order a Consultive Examination

As stated above, the ALJ has a duty to fully and fairly develop the record, *see Cook*, 783 F.2d at 1173, which is particularly important when a claimant appears without counsel, *Marsh*, 632 F.2d at 299. When a claimant appears pro se, the ALJ has "a duty to assume a more active role in helping [the claimant] develop the record." *Sims*, 631 F.2d 26, 28 (citing *Crider v. Harris*, 624 F.2d 15 (4th Cir. 1980); *Livingston v. Califano*, 614 F.2d 342 (3d Cir. 1980)). On review of the ALJ's decision, if "the absence of counsel created clear prejudice or unfairness to the claimant, a remand is proper." *Id.* (citing *Dombrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979)).

When developing the record, the ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook*, 783 F.2d at 1173 (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh*, 632 F.2d at 300). Although "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record," *id.*, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994). The ALJ must make a reasonable inquiry into a claim of disability; he has no duty to "go to inordinate lengths to develop a claimant's case." *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977).

17

While the ALJ generally has discretion in deciding whether to order a consultative examination, a consultative examination is required when the evidence as a whole is insufficient to support a decision. *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003). "The decision to purchase a consultative examination . . . will be made after [the ALJ has] given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of [a claimant's] medical sources." 20 C.F.R. § 404.1519a(a). Pursuant to the regulations, however, a consultative examination is normally required where "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved" or "[t]here is an indication of a change in [a claimant's] condition that is likely to affect [her] ability to work." *Id.* § 404.1519a(b). For example, in *Cook*, the Fourth Circuit held the ALJ had a duty to order a consultative examination to determine whether the claimant's impairment met the requirements of the Listings. 783 F.2d at 1173. The court noted there was evidence that the claimant's impairments met some of the requirements of the listings, but there were no tests to guide analysis of other requirements of the listings. *Id.* Consequently, the court held the record was incomplete and remanded the case to the Commissioner for further consideration of the claimant's claim. *Id.* at 1173–74.

**Substantial Evidence Supports the ALJ's Decision**

Plaintiff argues the ALJ failed to fully develop the record because Plaintiff was not evaluated "by a physician, psychologist, psychiatrist, family doctor, or orthopedist for the full development of the nature of severity of [Plaintiff's] mental and medical issues." [Doc. 10 at 2.] Plaintiff contends that without a consultative examination, the ALJ had to review

18

piece-meal medical reports of treatment, which did not contain any real inquiry into the level of severity of Plaintiff's impairments or Plaintiff's physical and mental limitations. [*Id.* at 7.]

The ALJ determined Plaintiff had two severe physical impairments—degenerative disc disease and gastroesophageal reflux disease—but no severe mental impairments. [R. 48.] To determine whether Plaintiff's mental impairments were severe, the ALJ rated the degree of Plaintiff's functional limitation in four functional areas. [R. 49–50.] To determine whether Plaintiff's severe impairments met or medically equaled one of the listed impairments, the ALJ specifically considered Listings 1.04 and 5.08. [R. 50.]

Although Plaintiff contends her medical records do not contain an indication of the level of severity of her impairments or the extent of her limitations, Plaintiff failed to provide the Court with any indication of where such evidence is needed—that is, Plaintiff has failed to outline how the ALJ's decision is not supported by substantial evidence. *See* 42 U.S.C. § 405(g) (stating that the ALJ's findings are conclusive if the findings are supported by substantial evidence). Upon review of the evidence, the Court finds the ALJ's decision—that Plaintiff's physical impairments were severe impairments, Plaintiff's mental impairments were not severe, and Plaintiff had no impairment that met or medically equaled a Listing—is supported by substantial evidence. Therefore, the ALJ did not err by failing to order a consultative examination because there was no "conflict, inconsistency, ambiguity or insufficiency in the evidence [to] be resolved." 20 C.F.R. § 404.1519a(b).

### *Degenerative Disc Disease*

The ALJ determined one of Plaintiff's severe impairments was degenerative disc disease, cervical and lumbar, with chronic pain.  [R. 48, Finding 3.]  However, the ALJ found this impairment did not meet or equal a listing.  [R. 50, Finding 4.]  In making this finding, the ALJ specifically considered Listing 1.04 and generally considered all musculoskeletal system listings.  [R. 50.]  As explained below, the Court finds the ALJ's determination with respect to Plaintiff's degenerative disc disease impairment is supported by substantial evidence and no consultative examination was required to develop the record with respect to this impairment.

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms.  *See Cook*, 783 F.2d at 1173 (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*,  No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (quoting *Cook*, 783 F.2d at 1172)).

### *Criteria of Relevant Listing*

Listing 1.04 reads as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

20

disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

*ALJ's Analysis*

When considering whether Plaintiff's impairments met or equaled Listing 1.04, the ALJ found that Plaintiff did not have findings of loss of gait and station or findings of lack of gross and fine manipulation.  [R. 50.]  The ALJ found no evidence of joint dysfunction or malformation, and he also found Plaintiff did not have consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, positive straight leg raises, or other findings to meet the requirements of the listed musculoskeletal impairments.  [R. 50.]

Upon review of the record, the Court finds the ALJ's determination is supported by substantial evidence. Plaintiff's MRI studies of the lumbar spine in September 2006 showed minimal disc bulge at L4-5 with no nerve root impingement. [R. 251.] In December 2006, Plaintiff was referred to Dr. Bucci for a neurosurgical evaluation; Dr. Bucci noted Plaintiff's MRI scanning showed degenerative disc disease in the cervical spine, but the lumbar spine MRI scan was entirely normal. [R. 263.] Upon examining Plaintiff, Dr. Bucci found Plaintiff had decreased range of motion of the cervical spine, normal bulk and tone, 5/5 motor strength, 1+ reflexes, normal sensation, no pathological reflexes, and normal gait. [*Id.*] Dr. Bucci diagnosed cervical degenerative disc disease without radiculopathy or myelopathy. [*Id.*]

A March 2007 radiology report noted diffuse increase uptake in Plaintiff's cervical spine, which was suggestive of degenerative changes. [R. 347.] At March and May 2007 exams, Plaintiff exhibited neck and lumbosacral spine tenderness, limited cervical spine range of motion, and lumbar paraspinal spasm. [R. 355, 359.] Plaintiff's visits to Oaktree Medical Centre noted medication relieved Plaintiff's neck pain. [R. 353, 357.] Doctors at the Anderson Free Clinic characterized Plaintiff's cervical problems as cervical arthritis. [R. 372–73.] Dr. Han's February 2009 exam of Plaintiff resulted in a diagnosis of cervical spondylosis with mechanical neck pain, which was treated with facet steroid injection. [R. 384–86.]

While Plaintiff argues the ALJ had only piece-meal medical reports to review, the Court notes that the record also contains a residual functional capacity assessment completed by state agency consultant Dr. Fass. [R. 338–45.] Even though Dr. Fass's

assessment was based on only the medical records pre-dating February 2007,[7] the ALJ was entitled to rely on Dr. Fass's opinion, to the extent Dr. Fass's opinion was consistent with the record. *Gordon*, 725 F.2d at 235 (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971)) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record."); *see also Smith v. Schweiker*, 795 F.2d 343, 345–46 (4th Cir. 1986) (stating that an opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner). Additionally, Plaintiff has failed to direct the Court to any "conflict, inconsistency, ambiguity or insufficiency in the evidence [that] must be resolved." 20 C.F.R. § 404.1519a(b). Consequently, based on the record before the ALJ, the Court finds the record amply supports the ALJ's conclusion that Plaintiff's degenerative disc disease did not meet or equal a listing; therefore, the ALJ did not err in failing to order a consultative examination.

### *Gastroesophageal Reflux Disease*

The ALJ also determined Plaintiff had a second severe impairment, gastroesophageal reflux disease ("GERD"). [R. 48, Finding 3.] However, the ALJ found this impairment did not meet or equal a listing. [R. 50, Finding 4.] In making this finding, the ALJ specifically considered Listing 5.08 and generally considered all digestive system listings. [R. 50.] As explained below, the Court finds the ALJ's determination with respect to Plaintiff's GERD impairment is supported by substantial evidence and no consultative examination was required to develop the record with respect to this impairment.

---

[7] Dr. Fass completed his residual functional capacity assessment on February 27, 2007, and he considered Plaintiff's medical records through January 2007. [R. 345.]

*Criteria of Relevant Listing*

Listing 5.08 reads as follows:

> Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08.

*ALJ's Analysis*

The ALJ found Plaintiff's GERD does not meet Listing 5.08 because there is no evidence of ascites, strictures, obstructions, fistula, varices, significant weight loss, laboratory findings such as albumin or bilirubin, or a need for transfusions.  [R. 50.] Further, the ALJ found no evidence of weight loss despite continuing treatments as prescribed, with BMI of less than 17.50.  [R. 50.]

On reviewing the record, the Court finds the ALJ's determination is supported by substantial evidence.  In February 2004, Plaintiff had a consultation with Dr. Veerabagu; Plaintiff reported she had been experiencing progressively worsening reflux for the past year. [R. 181–82.] A subsequent pathology report for an EGD performed in February 2004 noted Plaintiff's clinical information included GERD, weight loss, and abdominal pain.  [R. 183.] In June 2005, a barium swallow examination revealed a small hiatal hernia [R. 194], which was also seen in August 2006 upper gastrointestinal studies that additionally showed gastroesophageal reflux to the high cervical esophagus [R. 195].  Also in August 2006, Plaintiff reported worsening reflux, epigastric pain, and weight loss, and Dr. Boyer's impression was that Plaintiff had GERD.  [R. 193.]  In December 2006, Dr. Boyer noted Plaintiff had experienced no major weight gain or loss.  [R. 315; *compare* R. 315 (weight

of 120 pounds on December 7, 2006), *with* R. 318 (weight of 119 pounds on October 11, 2006).]  In January 2007, Dr. Veerabagu noted Plaintiff had lost fifteen pounds since he last saw her in 2004. [R. 301.]

Further, as explained above, the ALJ was also entitled to rely on the opinion of Dr. Fass, who, based on Plaintiff's medical records up to February 2007, found Plaintiff's GERD imposed no physical limitations that impacted her residual functional capacity.  [R. 345.]  Moreover, Plaintiff has failed to direct the Court to any "conflict, inconsistency, ambiguity or insufficiency in the evidence [that] must be resolved."  20 C.F.R. § 404.1519a(b).  Therefore, based on the record before the ALJ, the Court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not abuse his discretion by failing to order a consultative examination.

### Mental Disorders

Finally, the ALJ determined Plaintiff has some mental impairments, but the ALJ determined these impairments were not severe.  [R. 48.]  As explained below, the Court finds the ALJ's determination that Plaintiff's mental impairments were not severe is supported by substantial evidence, and no consultative examination was required to develop the record with respect to these impairments.

### Special Technique for Mental Impairments

In addition to the five-step evaluation process, the ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments.  20 C.F.R. § 404.1520a(a).  Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine if the claimant has a medically determinable mental impairment.  *Id.* § 404.1520a(b)(1).  Then the ALJ rates the claimant's

degree of functional limitation resulting from the impairment. *Id.* § 404.1520a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. *Id.* § 404.1520a(d).

To rate a claimant's degree of functional limitation, the ALJ considers four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C. To arrive at a rating, the ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.* § 404.1520a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). For the fourth functional area—episodes of decompensation—the ALJ uses a four-point scale: none, one or two, three, and four or more. *Id.* If the ALJ rates the claimant's degree of limitation as none or mild in the first three functional areas and none in the fourth functional area, the ALJ will usually conclude the claimant's impairment is not severe,[8] "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.* § 404.1520a(d)(1).

---

[8] "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

### ALJ's Analysis of Plaintiff's Mental Impairments

In analyzing Plaintiff's mental impairments, the ALJ found the applicable listings were 12.04, 12.06, and 12.09 [R. 49], and the ALJ analyzed the four broad functional areas—activities of daily living; social function; concentration, persistence, or pace; and episodes of decompensation [R. 49–50]. With respect to Plaintiff's activities of daily living, the ALJ found the Plaintiff had mild limitations. [R. 49.] The ALJ noted Plaintiff takes care of her grandchildren during the day, including feeding and changing diapers; helps a disabled neighbor on weekends; cooks, does laundry, grocery shops, and drives. [R. 49.] The ALJ also noted Plaintiff has no problem with personal hygiene, and she goes fishing every other month for three to four hours. [R. 49.] Further, the ALJ found Plaintiff had some limited activities of daily living due to her physical limitations. [R. 49.]

With respect to social functioning, the ALJ determined Plaintiff had mild limitations. [R. 49.] The ALJ noted Plaintiff frequently visited with friends and neighbors. [R. 49.] The ALJ also found in the record that Plaintiff was noted to occasionally have a flat affect, and Plaintiff reported being occasionally "snappish and irritable." [R. 49.]

With respect to concentration, persistence, or pace, the ALJ found Plaintiff had mild limitations. [R. 50.] The ALJ noted Dr. Thiyaga reported Plaintiff was oriented in all spheres, with intact thought process and appropriate though content. [R. 50; *see also* R. 324–37.] Further, the ALJ noted Dr. Thiyaga's report that Plaintiff had good attention, concentration, and memory. [R. 50; *see also* R. 324–37.]

Lastly, the ALJ found Plaintiff had experienced no episodes of decompensation of extended duration. [R. 50.] The ALJ noted Plaintiff received inpatient treatment in 2006, but the treatment was partly due to alcohol abuse and no depressive symptoms were noted

27

at that time.  [R. 50.]  Therefore, because Plaintiff's medically determinable mental impairments caused no more than "mild" limitation in the first three functional areas and caused no episodes of decompensation of extended duration, the ALJ concluded Plaintiff's mental impairments were not severe.

Upon review of the record, the Court finds the ALJ's conclusion is supported by substantial evidence.  In May 2006, before Plaintiff's alleged onset date of November 1, 2006, Plaintiff received inpatient treatment after she called a local hospital, threatening to carry out a suicide plan. [R. 185–91, 211–22.] Plaintiff admitted she had been drinking the day before she called the hospital [R. 185, 214, 220–21] and that she had been having trouble with her husband [R. 185, 187, 219].  Emergency room staff noted Plaintiff smelled of alcohol at the time of admission.  [R. 212.]  Upon discharge, hospital staff noted Plaintiff's Global Assessment of Functioning ("GAF") score was 80—compared with a GAF of 40 upon admission—and Plaintiff exhibited no depressive symptoms. [R. 186.] Plaintiff was diagnosed with adjustment disorder with mixed emotional features, and with alcohol abuse.  [R. 186.]  Depression was consistently noted in Plaintiff's medical records, but no limitations resulting from depression were noted.  [R. 265, 270, 273, 276, 279, 281, 285, 288, 292, 319, 323, 324–36.]

In March 2007, Dr. Varner, a state agency consultant, completed a psychiatric review technique. [R. 324–37.] Dr. Varner opined Plaintiff's mental impairments were not severe and imposed minimal limitations on her ability to perform basic work functions.  [R. 336.]  Dr. Varner noted Plaintiff's inpatient treatment in May 2006 was partly due to Plaintiff's alcohol use and was only a brief inpatient stay with no apparent need for subsequent inpatient psychiatric treatment.  [*Id.*]

28

In December 2008, more than two years after her May 2006 inpatient treatment, Plaintiff sought initial treatment for depression. [R. 367–68.] At that time, Plaintiff was not taking any antidepressant medication [R. 367]; when taking antidepressants, Plaintiff was noted to have a much brighter affect, to seem happier, to smile often, and to take better care of her appearance [R. 365]. At the hearing, Plaintiff testified that since December 2008, she has gone to a therapist once or twice a week and has taken Prozac, with no noted side effects. [R. 24–25.]

As explained above, to the extent it was consistent with the record evidence, the ALJ was entitled to rely on Dr. Varner's opinion, *see Gordon*, 725 F.2d at 235 (citation omitted), which synthesizes at least a portion of Plaintiff's mental health record, contrary to Plaintiff's contention that the ALJ had before him only piece-meal medical records. Further, Plaintiff has failed to direct the Court to any "conflict, inconsistency, ambiguity or insufficiency in the evidence [that] must be resolved." 20 C.F.R. § 404.1519a(b). Based on the record before the ALJ, the Court finds the ALJ did not abuse his discretion by failing to order a consultative examination, and the Court finds the ALJ's decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 28, 2011
Greenville, South Carolina

29